UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nar B. G., | Case No. 23-cv-2076 (JWB/JFD) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Martin J. O'Malley, Commissioner of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Nar B. G. seeks judicial review of a final decision by the Defendant Commissioner of the Social Security Administration, who denied the Plaintiff's application for supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Brief (Dkt. No. 11) and Defendant's "Memorandum in Support of Motion for Summary Judgment" (Dkt. No. 13).[1] Plaintiff raises the issue of whether the administrative law judge ("ALJ") properly considered the supportability and consistency of medical opinions by his psychiatrist, Chhabi Lail Timsina Sharma,

---

[1] On December 1, 2022, the District of Minnesota amended Local Rule 7.2, which governs procedures in social security cases, to conform to the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g). D. Minn. LR 7.2 advisory committee's note to 2022 amendment. The Supplemental Rules apply to actions filed on or after December 1, 2022, such as this case. The Supplemental Rules contemplate that the parties will file "briefs" in support of their positions presented for judicial review. The procedure established by the previous version of Local Rule 7.2, however, was a resolution of the case on cross-motions for summary judgment. *See* D. Minn. LR 7.2(c) (2015). Implementation of the new terminology and procedure has varied among practitioners, but the Court has observed no practical difference between the briefs and memoranda.

M.B.B.S., and therapist, Georgi Kroupin, Ph.D., M.A., L.P., L.M.F.T. Because the Commissioner's decision denying SSI is supported by substantial evidence in the record, the Court recommends denying Plaintiff's requested relief and granting Defendant's requested relief.

I.   **Background**

Plaintiff filed for SSI on April 29, 2021, alleging a disability onset date of March 29, 2021. (R. 32, 232.) Plaintiff's alleged disabilities were both physical and mental; however, the only issue raised before the Court is whether two of Plaintiff's mental health providers' opinions were properly evaluated in accordance with 20 C.F.R. § 416.920c, so the Court limits its consideration to evidence relevant to Plaintiff's mental impairments. Plaintiff was 39 years old when the application was filed and had past relevant work as a personal care assistant ("PCA") for his father. (R. 46, 65.)

A. **Procedural History**

Plaintiff's application was denied, both initially and on reconsideration. Plaintiff appealed to an ALJ, who held a hearing on June 24, 2022. (R. 54-89.) The ALJ issued a written decision on August 10, 2022, finding that Plaintiff was not disabled. (R. 48.) The ALJ followed the five-step sequential analysis described in 20 C.F.R. § 416.920. The ALJ considered whether Plaintiff was disabled based on the criteria of each step. If Plaintiff was not found to be disabled at any step, the ALJ proceeded to the next step. *See* 20 C.F.R. § 416.920(a)(4).

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April 20, 2021. (R. 34.) At the second step, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; history of right knee patellar fracture, with mild patellofemoral degenerative joint disease; type II diabetes mellitus; depressive disorder; and anxiety disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (*Id.*)

When considering at step three whether Plaintiff's mental health impairments met or medically equaled a listed impairment, the ALJ considered the listings for depression and anxiety disorders. (R. 37); *see* 20 C.F.R. Pt. 404, Subpart P, App. 1, §§ 12.04 ("depressive, bipolar and related disorders"), 12.06 ("anxiety and obsessive-compulsive disorders"). Specifically, the ALJ considered whether Plaintiff met the "paragraph B" criteria in the following four functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3). To satisfy the criteria, the impairment must cause at least one extreme or two marked limitations in the functional areas. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.00(A)(2)(b). The ALJ found only a mild limitation in the first area, and moderate limitations in the second, third, and fourth functional areas, and therefore concluded that the "paragraph B" criteria were not satisfied. (R. 37-38.)

3

Before proceeding to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is a measure of what a plaintiff can do despite their limitations. 20 C.F.R. § 416.945(a)(1). The ALJ made the following findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can perform occasional pushing/pulling with the right lower extremity; can occasionally climb ramps/stairs; no climbing ladders/ropes/scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extremes of temperature, wetness, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation; can have no exposure to hazards, such as the operation of dangerous moving machinery or unprotected heights; is capable of performing simple, routine, and/or repetitive tasks; able to sustain a simple routine and/or repetitive task over the course of a normal workday and workweek without interference from psychologically-based symptoms; able to adapt to the customary demands of work in a competitive work setting where tasks are simple, routine and/or competitive; would do best in a work setting away from the public and with brief and superficial contact with coworkers.

(R. 39.) In this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, Plaintiff's statements about the "intensity, persistence, and limiting effects" of the symptoms were not fully consistent with the medical and other evidence in the record. (R. 40.) The ALJ noted that many of Plaintiff's impairments had been ongoing for many years even before the alleged disability onset date and that no objective evidence showed any major exacerbation of the issues. (R. 40-42.) Further, the level to which Plaintiff complained he was disabled was inconsistent with the conservative treatment he received and the minimal clinical evidence available. (*Id.*)

Specifically, Plaintiff's "mental health treatment during the relevant timeframe has remained routine, conservative, and outpatient-only," and ongoing mental exams and observations "have not revealed any significant, ongoing abnormalities." (R. 43.) The ALJ found persuasive the opinions of the State Disability Determination Services ("DDS") consulting psychologists Maria Yapondijan-Alvarado, Psy.D. and Cynthia Crandall, Ph.D. (R. 45.) The ALJ found the mental health opinions of Plaintiff's treating psychiatrist and therapist, Dr. Sharma and Dr. Kroupin, to be unpersuasive. (*Id.*)

The ALJ articulated two main reasons for finding Dr. Sharma and Dr. Kroupin's medical source statements ("MSSs") unpersuasive. First, the ALJ noted the lack of consistency between Dr. Sharma's opinion and the other evidence in the record, noting "it does not comport with the overall mental status examinations and clinical observations which have failed to objectively demonstrate any significant, ongoing abnormalities." (R. 46.) The ALJ took issue with the fact that the mental health providers relied heavily on Plaintiff's subjective reports of his condition. (*Id.*) The ALJ found inconsistencies between Plaintiff's subjective reports and the objective findings in multiple places in the record. (*Id.*)

Next, the ALJ noted the lack of support for Dr. Sharma's opinion, stating "Dr. Sharma failed to cite to any objective medical evidence." (*Id.*) Further to the lack of support, the ALJ was unsatisfied with the checkbox format of the opinion. (*Id.*) The ALJ found that Dr. Sharma failed to provide objective support, and that overall, the MSS was "cursory" and "conclusory." (*Id.*) The ALJ found that Dr. Kroupin's opinion was

5

unpersuasive for the same reasons as Dr. Sharma's and reiterated that Plaintiff has only ever received routine mental health care. (*Id.*)

At step four, the ALJ concluded that Plaintiff could not perform any relevant past work. (R. 46.) Relying on the testimony of a vocational expert, the ALJ found there were jobs in the national economy that Plaintiff could perform based on Plaintiff's age, education, work experience, and RFC. (R. 47.) The vocational expert testified that in consideration of all the factors, a hypothetical person with Plaintiff's characteristics could perform jobs such as a marker (DOT 209.587-034, with 130,000 jobs in the national economy), a garment sorter (DOT 222.687-014, with 30,000 jobs in the national economy), or a routing clerk (DOT 222.687-022, with around 60,000 jobs in the national economy). (R. 84-85.) At step five, the ALJ found that Plaintiff was not disabled under the Social Security Act. (R. 47-48.) The ALJ made this determination because there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*)

Plaintiff appealed the ALJ's ruling to the Social Security Administration's Appeals Council, but the Council found no basis to review or change the decision. (R. 1.) This denial made the ALJ's decision final agency action subject to judicial review. 42 U.S.C. § 405(g). Plaintiff then filed a complaint in this Court.

**B.  The Medical Opinions of Dr. Sharma and Dr. Kroupin**

Dr. Sharma treated Plaintiff for depression and anxiety. (R. 45.) Dr. Sharma's first contact with Plaintiff was on May 6, 2020, and he reportedly had appointments with Plaintiff every three months after. (R. 576.) In October 2021, Dr. Sharma made an MSS in

the form of a short answer and checkbox statement. (R. 576-79.) In the MSS, he mentioned Plaintiff's diagnoses of major depressive disorder and generalized anxiety disorder, as well as the medications Plaintiff was prescribed for the disorders. (R. 576.) Dr. Sharma indicated that Plaintiff had marked limitations in all but one of the twenty-one categories, but failed to answer the short-answer request for objective documentation of testing that could explain Plaintiff's limitations. (R. 577.) Some categories in which Plaintiff was found to have marked limitations were understanding and remembering very short and simple instructions, making simple work-related decisions, and maintaining attention and concentration for more than two-hour segments. (*Id.*) Further, Dr. Sharma stated that Plaintiff's physical impairments led to his depression, and that his ongoing medical problems were the relevant factors behind his mental illness. (R. 576.) Dr. Sharma indicated that Plaintiff would be absent more than three days per month due to his impairments. (R. 578.)

In the relevant time period, Dr. Sharma had two visits with Plaintiff—as appears in the record—one in May of 2021, and one in January of 2022, with the MSS falling between the two appointments in October of 2021. (R. 395, 623, 576.) At the May 2021 visit, Dr. Sharma opined that Plaintiff's "form of thought" was "logical and goal-directed"; his attention and concentration were "good"; his judgment was "fair"; his cognition was "alert"; and his "recent and remote memory [was] intact." (R. 395.) At the January 2022 visit, Dr. Sharma opined similarly that Plaintiff's "form of thought" was "logical and goal-directed"; his attention and concentration were "good"; his cognition was "alert"; and his

"recent and remote memory [was] intact." (R. 623.) Plaintiff's judgment assessment had improved from "fair" to "good." (*Id.*) Additionally, Dr. Sharma had not increased or changed Plaintiff's depression and anxiety medications since his psychiatric intake. (R. 43, 524, 503, 480, 396, 625.) Dr. Sharma recommended Plaintiff would benefit from therapy, which he did seek. (R. 524, 503, 480, 397, 625.)

Dr. Kroupin saw Plaintiff for individual and family therapy on and off over the relevant time period. Plaintiff visited Dr. Kroupin for individual therapy in April and May of 2021, and then once in January of 2022, additionally visiting with his wife for family therapy once in May of 2021. (R. 439, 427, 619, 412.) Throughout Plaintiff's therapy, Dr. Kroupin noted that the factors impacting Plaintiff's mental impairments were his father's declining health, as well as Plaintiff's own inability to provide for and help his family due to his physical impairments. (R. 439, 427, 412, 619.)

In May of 2022, Dr. Kroupin provided an MSS in the form of short and checkbox answers. (R. 745-47.) Dr. Kroupin noted that a mental status examination had taken place two months earlier, on March 1, 2022, and the observations made were seemingly based on that exam. (R. 745.) Dr. Kroupin indicated that Plaintiff was well groomed, was cooperative, had normal speech, had a logical and coherent thought process, and had good insight into his illness. (*Id.*) As for cognition, Dr. Kroupin noted that Plaintiff had "major memory [and] concentration problems" including severe impairments in concentration and memory and a moderate impairment in attention. (*Id.*) These impairments were described as both observed and self-reported, with concentration and memory reportedly tested as

well. (*Id.*) No objective evidence of the concentration or memory test was provided. Dr. Kroupin opined that Plaintiff's behavioral, cognitive, and emotional condition "ha[d] been deteriorating rapidly" and would preclude Plaintiff from functioning socially and occupationally. (*Id.*) Dr. Kroupin indicated that Plaintiff had minimal or no ability in eleven of twelve categories and only moderate ability in the twelfth. (R. 746.) Further, Dr. Kroupin opined that Plaintiff would be absent more than three days per month due to the impairments. (R. 747.)

## II.   Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome, or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the

Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. Discussion

Plaintiff argues that the ALJ failed to properly consider the supportability and consistency of Dr. Sharma and Dr. Kroupin's opinions. (Pl.'s Br. at 8, Dkt. No. 11.) Under 20 C.F.R. § 416.920c, medical opinions are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. The two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022).

An ALJ assesses supportability by analyzing how well the medical source's opinion is justified by that source's use of objective medical evidence. "The more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Simply put, the more objective evidence a medical source adduces to support an opinion, the more persuasive the opinion is. *Id.*

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion[] or prior administrative finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." 20 C.F.R. § 416.920c(c)(2). That is, the ALJ evaluates whether the medical opinion at issue is consistent with evidence from sources other than the source who rendered the opinion. *Id.* In other words, supportability looks to how well the medical source justifies their own opinion with evidence from the record, and consistency looks to how well the medical source's opinion fits with other sources from the record.

**A. Consistency**

Plaintiff argues that the ALJ did not consider consistency when evaluating the persuasiveness of Dr. Sharma's and Dr. Kroupin's opinions. (Pl.'s Br. at 8.) Particularly, Plaintiff argues that the ALJ erred by failing to consider the consistency between the two mental health providers' opinions and by reasoning that the opinions were unpersuasive because they were based on Plaintiff's subjective reports. (Pl.'s Br. at 11-13.) The Court disagrees.

11

The ALJ expressly articulated that the opinions are "inconsistent with the claimant's . . . mental health treatment." (R. 46.) The ALJ identified specific records, such as the treatment records from Plaintiff's therapy and psychiatric visits, including his psychiatric prescriptions. (R. 412, 427, 439, 450, 395, 623, 619, 631, 637.) Further, the ALJ explained that although the opinions were consistent with subjective reports from Plaintiff, those statements were unpersuasive as well. (R. 46.) The ALJ found Plaintiff's statements unpersuasive because they were inconsistent with objective evaluations of Plaintiff's condition and with the conservative treatment he sought and received. (*Id.*) By contrast, the State DDS psychologists found that Plaintiff could perform simple, routine tasks; could adapt to the demands of work in a competitive setting; and could have brief and superficial contact with coworkers. (R. 45.)

Not only are the opinions of Dr. Sharma and Dr. Kroupin inconsistent with the objective evidence in the record, but there is also a great deal of evidence contrary to the alleged limitations. For instance, the mental evaluation by one of the state examiners, Dr. Crandall, in February 2022 mirrored many categories from Dr. Sharma's MSS from four months earlier. (R. 127-28.) However, Dr. Sharma's MSS had shown marked impairments in all but one category, while Dr. Crandall found the Plaintiff had no limitations in most categories and only moderate limitations in the rest. (R. 577, 127-28.) Then, just three months later, Dr. Kroupin's MSS indicated an extreme and rapid decline in mental capacity. (R. 745-47.) Dr. Kroupin's mental status exam was performed less than two weeks after Dr. Crandall's exam had indicated few to no cognitive impairments. (R. 745,

12

127-28.) This is a clear contradiction between Dr. Kroupin and Dr. Crandall, and "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

Using the objective evidence from the record, the ALJ found support for the evaluations by Dr. Yapondijan-Alvarado and Dr. Crandall. (R. 45.) Drs. Sharma and Kroupin did not provide any objective evidence to show the consistency of their opinions with the record. (R. 576-79, 745-47.) Therefore, substantial evidence supports the ALJ's consideration of consistency.

### 1. Consistency Between Dr. Sharma and Dr. Kroupin

Plaintiff argues that the two opinions are consistent with each other, and that the ALJ ignored this. (Pl.'s Br. at 12.) However, the ALJ found both opinions inconsistent with the "overall medical [and] . . . clinical observations." (R. 46.) Therefore, that the opinions were consistent with each other does not bolster their persuasive value. It is the ALJ's job to consider opinions in the context of "all of the available evidence," in determining whether a plaintiff is disabled. 20 C.F.R. § 416.929(a). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if it is inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).

The ALJ's determination that these opinions were inconsistent with the record as a whole is supported by substantial evidence such as mental status examination findings, clinical observations, routine and outpatient-only treatment, and the mental evaluations by

13

the State DDS evaluators. (R. 395, 623, 412, 427, 450, 619, 109-13, 126-28.) Their consistency with each other does not enhance their broader consistency or bolster their persuasiveness.

### 2. Plaintiff's Subjective Reports

Plaintiff argues that "relying on subjective reports is essential for mental health treatment." (Pl.'s Br. at 12.) This is true; however, Plaintiff's "routine, conservative, and outpatient-only" course of mental health treatment is inconsistent with the severity indicated in the opinions by Dr. Sharma or Dr. Kroupin, which they based in large part on Plaintiff's subjective statements.

The ALJ did not err in finding Plaintiff's subjective statements unpersuasive. In the context of an ALJ's inquiry into subjective complaints of pain, which is analogous in some ways to an inquiry into mental health, "[w]here objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir. 2001) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). Moreover, subjective reports about the severity of symptoms "will not alone establish that [a plaintiff is] disabled." 20 C.F.R. § 416.929(a).

The subjective statements made by Plaintiff about his symptoms are not consistent with either the objective medical evidence or the non-medical evidence. *See* 20 C.F.R. § 416.929(a). Neither State DDS psychologist found any major cognitive impairments. (R. 109-13, 122-23, 126-28.) Neither treating mental health care provider suggested any

treatment beyond Plaintiff's medication and therapy. (R. 395, 623, 412, 427, 439, 619.) Plaintiff did not seek any treatment beyond his regular medication and occasional therapy. (R. 43.) Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the record.

All in all, the record, when considered as a whole, supports the ALJ's determination that Plaintiff's subjective reports and the MSSs provided by Dr. Sharma and Dr. Kroupin are inconsistent with the level of impairment indicated by the objective evidence. Because the ALJ sufficiently considered consistency and that determination is supported by substantial evidence, the ALJ did not err as to this factor.

### B. Supportability

Plaintiff argues that the ALJ failed to properly analyze supportability. (Pl.'s Br. at 8.) Specifically, Plaintiff alleges that the ALJ failed to consider the details provided by the physicians in the MSSs as support. (Pl.'s Reply Br. at 3, Dkt. No. 14.) Further, Plaintiff claims that in the ALJ's consideration of supportability, the ALJ "did nothing more than conclude[] that the opinions were check box forms." (Pl.'s Reply Br. at 3.) The Court disagrees. The ALJ found the opinions unsupported because they did not "cite to any objective medical evidence," and their checkbox format was "cursory" and "conclusive." (R. 46.)

### 1. Lack of Objective Medical Evidence

The MSSs from Dr. Sharma and Dr. Kroupin are a combination of short answers and checkboxes. (R. 576-79, 745-47.) In the short answer format, Dr. Sharma explained that Plaintiff's "ongoing pain and difficulty with movement . . . makes it hard for him to function and it leads to stress, depression, and hopelessness." (R. 576.) Dr. Sharma also explained that Plaintiff's "multiple medical problems" would result in a need for unscheduled breaks during a workday. (R. 578.) However, in the space provided for details, Dr. Sharma failed to provide any documentation, objective evidence of testing, or even explanation of Plaintiff's serious cognitive impairments. (R. 577.)

Plaintiff indicates that the short answers provide explanations of the checkbox limitations, but they only support the notion that Plaintiff's physical health issues are the primary factor in his alleged disability. It is beyond a psychologist's expertise to determine that a plaintiff cannot work primarily based on their physical ailments, *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010), and thus it would not be erroneous for the ALJ to consider this as part of the supportability assessment.

With respect to the checkboxes on Dr. Sharma's MSS, Dr. Sharma marked that all but one of Plaintiff's mental abilities would be limited to a "marked" degree. (R. 577.) However, there are no clinical findings or observations described on the form that would support such limitations.

Dr. Kroupin's MSS was also a combination of short answers and checkboxes. (R. 745-747.) In short answers, Dr. Kroupin set forth Plaintiff's diagnoses and contextual

factors, and listed Plaintiff's self-reported and observed symptoms. (R. 745.) Although the MSS itself was completed in May 2022, it referred to a mental status examination dated March 1, 2022. (R. 746-47.) That exam, according to Dr. Kroupin, revealed "severe" limitations and minimal to no ability in most cognitive categories. But the progress note dated March 1, 2022, does not support those findings. (R. 697-700.) Indeed, there are no objective findings on the progress note or a summary of a mental status examination. (*See id.*) Rather, the note summarizes Plaintiff's subjective statements (including a statement that "he feels somewhat better"). (R. 698.)

Dr. Kroupin attempted to explain the discrepancies between the MSS opinion and previous treatment records by stating that "patient's condition . . . has been deteriorating rapidly." (R. 745.) However, Dr. Kroupin provides no objective evidence or detailed explanation of this extreme decline, either on the form itself or in contemporaneous treatment records.

Overall, Dr. Sharma's and Dr. Kroupin's own MSSs are unsupported by the mental evaluations they themselves made in the course of Plaintiff's treatment. It was not until their MSSs that either doctor noted any major impairments of Plaintiff's psychiatric or cognitive functioning beyond his mild and treated diagnoses. (R. 395, 623, 576.) It is not erroneous for an ALJ to find an opinion less persuasive because the limitations were never mentioned in treatment records and are unsupported by objective evidence or reason. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

Throughout Plaintiff's care, the doctors noted progress, a friendly and cooperative demeanor, logical and goal-directed thoughts, and good cognition and memory. (R. 395, 576, 427, 439, 450, 619.) Even months after Dr. Sharma submitted the MSS indicating that Plaintiff had marked impairments in various memory and cognitive categories, he indicated on a mental status examination that Plaintiff had "good" attention, concentration, insight, and judgment, as well as an "intact" memory. (R. 577, 623.) Moreover, Plaintiff's mental disorders were not extreme and required only mild, routine treatment, which supports the ALJ's determination of not disabled.

### 2. The Checkbox Forms Were Not Sufficient

Plaintiff argues that the ALJ erred in finding the opinions unpersuasive based on their checkbox format. (Pl.'s Br. at 12.) This was not an error. The opinions were, indeed, conclusory and "entitled to little evidentiary value on [their] face, because [they were] rendered on a check-box and fill-in-the-blank form." *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022). An ALJ may find less persuasive a treating physician's checkbox opinion where the listed limitations are not supported with the physician's treatment, notes, or objective evidence. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). While a checkbox MSS is not deficient *per se*, the format may impact the ALJ's assessment of the opinion's persuasiveness based on the factors in § 416.920c(c). *See Reed*, 399 F.3d at 921.

In this case, the format of Dr. Sharma's and Dr. Kroupin's opinions prevented them from effectively explaining how the limitations were supported by the record. Moreover, even when given the opportunity to provide supporting explanations or objective evidence,

the physicians failed to do so. Accordingly, the ALJ did not err in considering the format of Dr. Sharma and Dr. Kroupin's checkbox MSSs because they provided no medical evidence and "little to no elaboration." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010.)

### C.  Conclusion

Overall, the ALJ adequately addressed supportability and consistency by commenting on the discrepancies between Dr. Sharma's and Dr. Kroupin's opinions and the rest of the record, noting the lack of cited supporting evidence, and highlighting the overall conclusory nature of their opinions. Ultimately, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is, therefore, not erroneous.

## IV.  Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 11) be **DENIED**;

2. The relief requested in Defendant's Memorandum in Support of Motion for Summary Judgment (Dkt. No. 13) be **GRANTED**;

3. The decision of the Commissioner of Social Security be **AFFIRMED**; and

4.  **JUDGMENT BE ENTERED ACCORDINGLY**.


Date: July 8, 2024                                  *s/ John F. Docherty*
                                                    JOHN F. DOCHERTY
                                                    United States Magistrate Judge


**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).